Ruffin, C. J.
 

 Without wading through the voluminous depositions, or discussing the various points of fact that arise on them, the Court may safely decide this cause «pon the insufficiency of the plaintiffs’ entry. Its vagueness renders it void, as against a subsequent enterer, who surveys and pays his money before the plaintiffs had made their entry more specific, if the expression may be allowed, by-a survey, identifying the land they meant to appropriate. The construction of the entry laws, contended for by the plaintiffs, would change the meaning of them entirely, from what they have been understood; and would make an entry, not a mode of appropriating a particular pieee of land as distinguished from all other land, but as creating a prior, and, in some degree, a floating right, to have a certain quantity of unappropriated land, any where the enterer might select within the two years, on a certain stream or mountain in the County. It would consequently postpone all other persons in entering and surveying, until the prior enterers chose to make their selection, and in any form which their caprice or interest might from time to time dictate. No construction of the acts could be more erroneous or mischievous — more directly opposed to the language or the policy of the Legislature. In the case of
 
 Harris
 
 v.
 
 Ewing,
 
 1 Dev. and Bat. Eq. 369, the Court held that a vague entry was not indeed absolutely void; because it was not material to the State, to whom she granted, and the defect might be supplied by a survey, which would render the party’s claim more specific. Therefore, there was a decree against another enterer, who made his entry after the prior vague enterer had actually surveyed, and with notice
 
 of
 
 
 *92
 
 it. That was, indeed, going beyond the words of the act, upon a'very liberal construction, which was adopted with hesitation. It certainly can be carried no further in support of vague entries; which would be an encouragement to negligence or deception in enterers. And in that case, the Court used the language, that an entry ought to be so explicit as to give reasonable notice to a second enterer of the first appropriation; and that, if it do not, and the same land be entered again, the last purchaser has conscience on his side, while the fault is on thfe other. The present case falls precisely within that rule.The plaintiffs’ entry is altogether indefinite, except in quantity, and except in the beginning — supposing that to be as now claimed by the plaintiffs. It is true, that from its lying on the County line it is seen, that it is to be on the North of the beginning. But it does not specify any thing else, and it cannot be told, whether the land is to laid out by running East or West on the County line irom the beginning, nor how far-in either direction, neither by calls for distance, or natural objects or other lines, or any other thing. It was therefore positively uncertain, what lands the plaintiffs would survey, for the description bound them to nothing but a beginning, and they might shift and change as they pleased, until the time when it would lapse unless ripened into a grant. No case coiild more strikingly illustrate the danger and error of the construction contended for by the plaintiffs, than this very one. The entry is vague in itself, and wre find a multitude of witnesses disputing about the single object designated in it, and about the plaintiffs’ declarations at different times, as to the point of beginning ; and, moreover, it is absolutely certain, that they had, when they entered or for months afterwards, no view to the particular place which is the bone of this contention. Standing upon the entry alone then, the plaintiffs could not recover, according to the rule in
 
 Harris
 
 v.
 
 Ewing.
 
 But in that case the plaintiffs had made a survey and completely identified the
 
 *93
 
 land he wanted, and this the defendant knew before he made his entry; and upon that ground exclusively that decree proceeded. Now, that circumstance operates directly the other way between the present parties; for these plaintiffs let their claim rest in their vague entry, until the defendants had made an entry and survey, and got a grant. The reasoning therefore and principle of decision in
 
 Harris
 
 v.
 
 Ewing
 
 are directly against the plaintiffs in this suit. It is true, that the defendants had notice of the-entry of the plaintiff; but, after they read it, they could learn nothing from it. Nobody could lay it down, unless he had the plaintiffs there to say, which land they chose. It is manifest, therefore, the very subject of the entry is not designated in the entry, but by the subsequent election of the enterers. Had the defendants gone to the plaintiffs themselves for information, as to the land they meant to take up, (if they had been under any obligation to do so in any case) the enquiry would have been unavailable in this case, for the plaintiffs did not then know how they would have their survey made. They could only have answered the defendants, that they must wait their pleasure to select the land, so as, in effect, to stop all entering after the first in a neighborhood, until the title on that is completed. But the defendants were not at all obliged to make any application to the plaintiffs on the subject. Where one is buying a legal title and has notice that a person claims an equity therein, he must take care in due time to ascertain the nature and extent of the claim. But that does not apply in a case of this sort; for an enterer has no equity or collateral claim independent of the entry itself, if the case still stands on the entry, and therefore the entry ought to give the requisite information, or, at all events, the enterer ought without delay to supply its defects by an actual survey, setting apart the land entered. Then an entry, made by one with knowledge of the survey as well as of the entry, would be
 
 mala fide,
 
 and convert the party into a trustee.
 
 *94
 

 It
 
 is unquestionable, however, that these defendants did not and could not know or guess, that they were encroaching on the plaintiffs’ entries. For, independent of the disputes as to the point intended and understood by different persons as the beginning, according to the present caff for “ Lowe’s bear pen,” it is certain, that the entry, as actually written in the entry book, when the defendants entered, called for “ the
 
 Locust
 
 bear pen,” which was five miles from the nearest point of the defendants’ grant. Indeed, if the call therein -had been “ Lowe’s” and not “ Locust,” it would still have been impossible for the defendants, by any experimental lines, to have first loft the land for the plaintiffs, before they took that for themselves. The defendants, therefore, intended no wrong to the plaintiffs and did them no wrong. The whole wrong was with the plaintiffs themselves in not getting such knowledge of the land, as to be able to give a sufficient description of it in the entry, and then in delaying t.o identify it by a survey, so as by notice of it to affect the conscience of the defendants. Therefore the bill must be dismissed with costs.
 

 Per Curiam.
 

 Decree accordingly.